GARRISON, *Appellant*, v. THE BABBAGE TRANSPORTATION COMPANY *et al.*

1. **Practice**: JUDGMENT, PRIVIES NOT PARTIES, WHEN BOUND BY. Where one is bound to protect another from liability, he is bound by the result of a litigation to which such other is a party, if he had notice of the litigation and opportunity to control and manage it. But to render one so liable, the issues and defences must be substantially the same in such litigation as they would be in a suit prosecuted by the defendant therein against the person so sought to be held liable.

2. ———— : ————: CARRIER, LIABILITY OF : DELIVERY. Plaintiff bought nine hundred and eighty-five tons of iron as called for by a bill of lading, and on the faith of the bill, and sold the same to an iron company, who paid for it, and to whom it was delivered. The iron company sued plaintiff on his contract of delivery, alleging that only nine hundred and five tons were delivered and recovered the price of the eighty tons deficit. *Held*, that the transportation company issuing the bill of lading is not bound by the judgment against the plaintiff, although notified by him to defend the suit, inasmuch as the defences available to it would not have exonerated plaintiff from liability to the iron company.

3. **Pleading**: BREACH OF CONTRACT. A petition, to state a cause of action on a shipping contract, should set forth the terms of the contract and allege a breach thereof.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

AFFIRMED.

*Edw. Cunningham, Jr.*, for appellant.

Defendants join in a pleading which they call their joint and several demurrer. It is a joint pleading going to the merits, and should have been overruled, if the petition was good against either of them. *Wilkerson v. Rust*, 57 Ind. 172. The petition states a cause of action. Both defendants were directly liable to the consignee. Redfield on Carriers, sec. 259. They were bound to carry and deliver the iron, because both had received it for that purpose. Besides this, the St. Louis and New Orleans Company was liable to the consignee because of its assumption of all the contracts and liabilities of the Babbage Company. Defendants were bound for the delivery of the iron on the landing to plaintiff and plaintiff was bound for its delivery to the iron company. The duties of the plaintiff and the defendants were identical and the measures of damages for the breach of those duties were also identical. Plaintiff directed defendants to deliver to his vendee and they undertook and pretended to do so. Defendants could not discharge their liability to plaintiff by showing that they delivered all the iron they received at New Orleans, because plaintiff having purchased on the faith of their bill of lading, they are estopped to deny its correctness. *Ryle v. Railroad*, 42 Conn. 579; *Byrne v. Weeks*, 7 Bosw. 372; Redf. on Carriers, sec. 249; *Howard v. Tucker*, 1 B. & Ad. 712; *Cox v. Patterson*, 30 Ala. 608; *Armour v. Railroad*, 65 N. Y. 111; Bigelow on Estoppel [3 Ed.] 84; *Heiser v. Hatch*, 36 N. Y. 614; *Kip v. Brigham*, 6 Johns. 158; *Clark v. Carrington*, 11 U. S. 308; *Inhabitants v. Holbrook*, 9 Allen, 117. These defendants having had notice of the suit of the iron company against plaintiff and opportunity to defend it, and to appeal from the judgment rendered, are bound by that judgment, and are liable to plaintiff, as for

money paid to their use, for all sums plaintiff has been compelled to pay by reason of the suit. Bigelow Estop. 84 ; 1 Greenleaf Evid., secs. 522, 523, 525 ; *Whittaker v. McCormick*, 6 Mo. App. 114 ; *Strong v. Ins. Co.*, 62 Mo. 289 ; *Wood v. Ensel*, 63 Mo. 193 ; *Gantt v. Ins. Co.*, 68 Mo. 503 ; s. c., 4 Mo. App. 7 ; *Chicago v. Robbins*, 2 Black, 418 ; *Lovejoy v. Murray*, 3 Wall. 1 ; *Robbins v. Chicago*, 4 Wall. 657 ; *Veazie v. Railroad*, 49 Me. 119 ; *Portland v. Richardson*, 54 Me. 46 ; *Littleton v. Richardson*, 34 N. H. 179 ; *Conger v. Chilcote*, 42 Ia. 18 ; *Harvie v. Turner*, 46 Mo. 444 ; *Heiser v. Hatch*, 86 N. Y. 614 ; *Kip v. Brigham*, 6 Johns. 158 ; *Clark v. Carrington*, 7 Cranch, 308 ; *Inhabitants v. Holbrook*, 9 Allen, 17.

*Given Campbell* for respondents.

(1) The point that the demurrer, being joint and several, should have been overruled, if the petition was good as to either of the defendants, cannot be seriously urged in this state. The statute provides that, "two or more defendants, making the same defence, shall answer jointly." R. S., sec. 3523. The cases cited to sustain the point that defendants are estopped from denying the correctness of the bill of lading do not bear out that proposition. *Pollard v. Vinton*, 105 U. S. 7 ; *Schooner v. Buckingham*, 18 Howard, 182 ; Hutchinson on Carriers [Ed. 1880], sec. 122, 123, 124 ; *Bank v. Lavielle*, 52 Mo. 380. The next point made in the brief of appellant is, that the defendants, having had notice of the suit, and opportunity to defend it, should be bound by the judgment and liable to plaintiff, as for money paid to their use, for all sums plaintiff has been compelled to pay by reason of this suit. This does not state the rule correctly. The rule, as laid down by our Supreme Court, is as follows : "Where one is bound to protect another from a liability, he is bound by the

result of a litigation to which such other is a party, provided he had notice of the litigation and an opportunity to manage and control it." *Strong v. Ins. Co.*, 62 Mo. 289. (2) The petition states no cause of action. (*a*) If plaintiff, by his petition, intended to sue the Babbage Company upon its contract of affreightment, he should have alleged this contract, set out its terms, and filed the bill of lading with the petition, and alleged the breaches of said contract. (*b*) If the plaintiff intended to set out a cause of action founded in tort for his damages arising from a false bill of lading, then a *fraudulenter* and a *scienter* should have been alleged, and as the petition is deficient in these matters it was properly held bad by the court *a quo*. (*c*) If it was the intention of plaintiff to hold the Babbage Transportation Company liable " over " to the plaintiff, then it is not a good petition (even if it were not otherwise deficient as hereinbefore stated), for the issues were not identical. Where the pleadings show that there is any doubt of the identity of the issues or causes of action, such action does not lie. *Spurlock v. Railroad*, 76 Mo. 67 ; *State ex rel. v. Boothe*, 68 Mo. 552 ; *Railroad v. Elmore*, 53 N. Y. 624 ; *Russell v. Place*, 94 U. S. 608 ; *Cromwell v. County of Sac*, 94 U. S. 351 ; *Packet Co. v. Sickels*, 5 Wall. 592 ; *Miller v. McManus*, 57 Ill. 126 ; *Yeates v. Briggs*, 95 Ill. 79 ; *Hanna v. Reade*, 102 Ill. 596 ; 1 Greenleaf Evid., secs. 528, 529. The findings upon matters not involved or litigated are not conclusive. *Beckwith v. Thompson*, 18 W. Va. 103 ; *Yeates v. Briggs*, 95 Ill. 83 ; Freeman on Judgments, sec. 257. Such judgments are also not conclusive as to matters collaterally involved. 2 Phillips Evid. 4 ; Freeman on Judgments, sec. 258 ; 1 Greenleaf Evid., secs. 528, 529.

NORTON, C. J.—This case is before us on plaintiff's appeal from the action of the circuit court of the city of St. Louis in sustaining a demurrer to his petition.

The substantial averments of the petition are as follows: That defendants are corporations, and at the dates mentioned, were common carriers of goods from the city of New Orleans to the city of St. Louis; that, about the thirteenth of December, 1879, the firm of Minnegerode & Berl, at the city of New Orleans, delivered to the Babbage Transportation Company, 985 tons, 9 cwt., 7 lbs., of old railroad iron belonging to said firm, to be safely carried from New Orleans to St. Louis, and there to be delivered to said firm or its assigns; that said Babbage Transportation Company then received and took charge and possession of said iron, for the purpose aforesaid, and promised and undertook, in consideration of freight to be paid it, to so carry and deliver said iron; and therefor did then issue and deliver to said firm its bill of lading, wherein was recited the receipt by it from said firm for said purpose of 985 tons, 9 cwt., 7 lbs., of old railroad iron.

The petition then states that afterwards, about the nineteenth of December, 1879, and while said iron was in the hands of said Babbage Transportation Company, its officers, directors, and stockholders caused the defendant, the St. Louis and New Orleans Transportation Company to be organized and incorporated as its successor, with the same stockholders, directors, and officers; that all the capital stock of the new company was gratuitously issued as full paid to the old stockholders in proportion to their respective shares in the old company, and that, immediately thereafter, about the second of January, 1880, said stockholders, officers, and directors, acting for both companies at the same time, transferred and delivered over, and caused to be transferred and delivered by the old company to the new, all the property, franchises, rights, contracts, and business of the old company; that, in consideration thereof, said new company (St. Louis & New Orleans Transportation Company) assumed all obligations, contracts, and liabilities

of the old company, which liabilities were less in amount than half the value of the property so transferred ; that, besides such assumption, no consideration was given for the transfer ; that, in pursuance of the transfer and assumption, the new company, about the second of January, 1880, took charge and possession of all the property, franchises, rights, contracts, and business of the Babbage Company, and without the consent or knowledge of Minnegerode & Berl, or of plaintiff, took charge and possession of the aforesaid lot of iron, till then at New Orleans in the hands of the old company, to be carried by the new company, under the aforesaid bill of lading, and to be delivered as was therein provided.

The petition then states that, after delivery of the iron to the old company, and before its arrival at St. Louis, Minnegerode & Berl exhibited the bill of lading to the plaintiff, and that plaintiff, upon the faith of the bill, bought the consignment of iron from Minnegerode & Berl as being 985 t., 9 cwt., 7 lbs., and for value took from them an assignment of the bill of lading ; that, thereafter and before the arrival, plaintiff, upon the faith of the bill of lading, sold said shipment of iron as being 985 tons, 9. cwt., 7 lbs., to the Chouteau, Harrison & Valle Iron Company, at the price of $44.50 per ton, that being the value thereof at the time of its arrival at St. Louis, to be delivered on its arrival at the steamboat-landing at St. Louis, that being the place where it was delivered by the carrier ; that, about the time of the arrival, said Chouteau, Harrison & Valle Iron Company paid plaintiff $43,852.60, the purchase price in full for 985 tons, 9 cwt., 7 lbs.; that before arrival, plaintiff had notified defendants that the bill of lading had been assigned to him and the iron bought by him and sold by him as aforesaid ; that, about the fifth of February, 1880, defendants notified plaintiff that the iron had arrived at St. Louis, and were requested by plaintiff to deliver it

to said Chouteau, Harrison & Valle Iron Company on the landing at St. Louis; that defendants undertook and proceeded to deliver accordingly and pretended to make full delivery, and did make partial delivery directly to the Chouteau, Harrison & Valle Iron Company, and on the seventh of February, 1880, represented to plaintiff that they had completed the full delivery on that day; that plaintiff then paid defendants' freight and charges on the iron.

The petition further states that no delivery of said iron was ever made by defendants, and that, soon after said seventh of February, the Chouteau, Harrison & Valle Iron Company claimed of plaintiff that only 905 tons, 670 lbs., of said iron was delivered, and that there was a shortage of 80 tons, 338 lbs., of the iron called for by the bill of lading, which deficiency, at the price and value of the iron at the time and place of delivery, amounted to $3,566.85, which sum, with interest from the seventh of February, it claimed and demanded of plaintiff, and brought its suit therefor against plaintiff; that plaintiff notified defendants of the claim and of the suit, and requested defendants to come in and defend the suit; that defendants aided plaintiff in obtaining evidence, but refused to become parties of record to the suit; that plaintiff defended the suit in good faith and to the best of his ability, and employed attorneys to conduct the defence, but that the suit resulted in a judgment against the plaintiff for $3,912.92, and costs, $247.45, of which these defendants then had notice.

The petition states further that the only matter in controversy in said suit was the amount of iron delivered by these defendants to Chouteau & Company, as aforesaid; the plaintiff in that suit claiming that only 905 tons, 670 lbs., were delivered, and this plaintiff, there defendant, contending that 985 tons, 9 cwt., 7 lbs., were delivered; that when said judgment was rendered, this plaintiff made his motion for a new trial, and it being

overruled, he in ample time for appeal offered these defendants to take at their cost an appeal from the judgment or to allow these defendants the use of his name for that purpose, which offers were declined; that execution issued on said judgment, and that, under that execution, the sheriff collected of plaintiff, on the fourth of April, 1883, $4,254.92, and that besides that sum the plaintiff had been compelled to pay, in attorneys' fees and costs of said suit, seven hundred and fifty dollars, making a total of $5,004.92. For this sum with interest, judgment is prayed.

This petition predicates the right of plaintiff to recover from defendants the amount of the judgment, costs, etc., rendered in the suit of Chouteau, Harrison & Valle Iron Company against him, for his failure to deliver eighty tons of iron according to the terms of his contract, upon the fact that they had notice of the pendency of the suit and opportunity to defend the same. The rule governing in such cases is stated in *Strong v. Ins. Co.*, 62 Mo., at p. 299, as follows : " Where one is bound to protect another from a liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the litigation and an opportunity to manage and control it." The qualification to this rule, as recognized in the above case, as well as in the case of *Gantt v. Ins. Co.*, 68 Mo., at 584, and *Whitaker v. McCormick*, 6 Mo. App. 114, is, that the issues and defences in the two suits must be substantially the same.

The issues in the suit of *Chouteau, Harrison & Valle Iron Co. v. Garrison*, were : Did Garrison sell and agree to deliver to the iron company nine hundred and eighty-five tons of iron at the price paid, and did he fail to comply with his contract in not delivering eighty tons? If the transportation companies had come in and undertaken a defence of that suit they could not have defeated the iron company's recovery against Garrison for his

failure to deliver said eighty tons, by setting up either that the iron had not been received by them, for carriage, or that the bill of lading had not been issued by them, or that if issued and the iron received, that eighty tons of it had been lost by some extraordinary circumstance, which, either by the terms of their contract, or which, by some rule of law, would have exempted them from liability for such loss. The iron company could not have been required to litigate such defences, and if made and established, they would not have had the effect of exempting Garrison from liability for the breach of his contract in failing to deliver the number of tons of iron which he had sold and been paid for, and which he agreed to deliver. As stating a cause of action against defendants on a shipping contract, the petition is defective in not setting forth the terms of the contract and alleging a breach thereof.

Judgment affirmed, in which all concur except Judge Sherwood, absent.