Argued May 28, decided June 4, 1912.

## REID v. STANLEY.

[124 Pac. 646.]

APPEAL AND ERROR—RECORD—QUESTIONS—FINDINGS—CONCLUSIVENESS.

1.  Where there is no bill of exceptions in the record, the court on appeal must, as required by Section 159, L. O. L., take the findings of the court as a verdict.

APPEAL AND ERROR—RECORD—RULINGS ON EVIDENCE—BILL OF EXCEPTIONS.

2.  Error in the admission or exclusion of evidence in a cause tried by the court without a jury can only appear by bill of exceptions.

APPEAL AND ERROR—RECORD—QUESTIONS REVIEWABLE—CONCLUSIONS OF LAW.

3.  Where there is no bill of exceptions in the record on appeal in a cause tried by the court without a jury, the court on appeal can only consider whether the conclusions of law deduced from the facts found are correct.

INDEMNITY—CONSTRUCTION OF CONTRACTS—LIABILITY.

4.  An agreement by stockholders to hold a purchaser of their stock harmless from claims for damages by trespass growing out of the man-

agement of the corporation by the sellers, and an agreement by the purchaser to hold a buyer from him harmless from claims growing out of his management of the corporation since he took charge thereof, relate to different matters, and there is no privity of contract between the original sellers and the ultimate buyer, and the liability of the original sellers to their purchaser must result, if at all, from their contract and for damages visited on him as a consequence of something to which the agreement was subsidiary, and such liability is not measured in any degree by the subsequent agreement between the intermediate purchaser and the buyer from him.

CONTRACTS—CONSTRUCTION.

5. The scope and effect of a contract must be determined by its own terms.

INDEMNITY—CONTRACTS—CONSTRUCTION.

6. Holders of all the stock of a corporation, to induce a purchaser to buy their stock, agreed to hold him harmless from claims for damages arising out of the management of the corporation by them. Subsequently the purchaser agreed to hold a buyer from him harmless from any claims for damages from corporate management since he took charge. Prior to the subsequent agreement, judgment had been rendered against the corporation based on claims arising under the original management. The original sellers unsuccessfully defended the action against the corporation on such claims. *Held* that, though the judgment was, under Section 756, subd. 2, L. O. L., conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the action, the intermediate purchaser, having disposed of his entire interest in the corporation before satisfying the judgment, could not recover on the agreement with the original sellers, in the absence of any showing that he sold for less than he paid for the stock, or that he was not fully reimbursed for all expenses in the purchase thereof, or that any claim was made against him individually on account of the damages resulting in the judgment, or that he had been compelled to pay anything by reason of his relation with the corporation as covered by the agreement with the original sellers.

From Multnomah: EARL C. BRONAUGH, Judge.

This is an action by William Reid against F. S. Stanley, L. C. Stanley, W. S. Dwinnell, and R. Smith. From a judgment in favor of defendants, plaintiff appeals.

                                          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. F. Boothe*.

For respondents there was a brief with oral arguments by *Mr. John H. Hall* and *Mr. Jesse Stearns*.

MR. JUSTICE BURNETT delivered the opinion of the court.

The findings of fact follow the allegations of the complaint without material variance. From them we learn, in substance, that prior to February 16, 1905, the defendants were owners of all the capital stock in two corporations, the Columbia Timber Company and the Goble, Nehalem & Pacific Railway Company, and exercising the corporate powers of the companies, in the course of some logging operations, they had cut and removed from the land of one Davidson substantially all the timber and had converted it to their own use. At the date mentioned the plaintiff for a valuable consideration purchased from the defendants all the shares they held in the two corporations, and the stock was transferred, one share to each of two associates of plaintiff, and the remainder directly to himself. The conveyance was thus made so that there could be three stockholders for directors and to enable the plaintiff, as he did until March, 1907, to continue the business under the corporate names. The fourth finding of fact reads thus:

"That at the time plaintiff so purchased said capital stock of said corporations, the defendants, for the purpose of inducing plaintiff to make said purchase, and in order to protect the plaintiff from the acts of the defendants in so cutting said timber upon the land above described, entered into a written agreement with the plaintiff whereby they agreed to hold the plaintiff harmless from any and all claims for damages by trespass growing out of the management of the said corporations or either of them while they were thus engaged in logging, and that thereby the defendants intended to include any claim that might thereafter be made by said E. L. Davidson for cutting his said timber."

The findings further recount that in April, 1906, Davidson commenced an action against the Columbia Timber Company to recover, among other things, damages for cutting and removing the timber alleged to

have been done in 1905 while that company was managed by the defendants here. These defendants employed counsel, who conducted a defense of that action, which on November 3, 1906, resulted in a judgment against the company for $2,000. At the request of these defendants, the plaintiff appealed that cause to this court; but such proceedings were taken therein that the appeal was dismissed and the cause remanded to the circuit court, where a judgment on the mandate was rendered against the timber company November 1, 1907, for the full amount of the original award with interest and costs, amounting to $2,668. While the cause was pending on appeal, on March 19, 1907, the plaintiff sold all the stock of the two corporations to O. M. Clark and his associates, composing a partnership. While the negotiations for such sale were in progress, and as an inducement to the consummation thereof, the plaintiff, on February 23, 1907, entered into an agreement in writing with Clark to hold him and his associates harmless from any and all claims for trespass growing out of the management of the corporations or either of them since the plaintiff took charge of the same. In that agreement no special mention was made of the judgment pending on appeal. About December 16, 1907, Davidson caused execution to be issued out of the circuit court with instruction to collect the amount of the judgment from the Columbia Timber Company, whereupon the plaintiff called upon the defendants and demanded that they should hold him harmless from said judgment; but, the defendants refusing to do so, plaintiff paid the same in full. As a legal conclusion the circuit court held that the satisfaction of the judgment against the timber company by the plaintiff, as stated, was a mere voluntary payment, and that he was not entitled to any relief against the defendants in this action.

From the abstract we learn that the plaintiff submitted findings of fact, substantially like those returned by the court, coupled with conclusions of law culminating in a judgment for the plaintiff; but the court refused to adopt them. The plaintiff assigns as error that the court was wrong in finding that the judgment obtained by Davidson against the Columbia Timber Company was not within the purview of the indemnity agreement entered into between plaintiff and Clark, and that plaintiff in paying said judgment acted voluntarily. A second assignment is, in substance, that the court erroneously refused to find in favor of the plaintiff as demanded by his motion.

1. There is no bill of exceptions presented in the record. Hence we must take the findings of the court as a verdict. Section 159, L. O. L.; *Ferguson* v. *Reiger*, 44 Or. 538 (76 Pac. 14); *Flegel* v. *Koss*, 47 Or. 366 (83 Pac. 847); *Courtney* v. *Bridal Veil Box Factory*, 55 Or. 210 (105 Pac. 896); *Seffert* v. *N. P. R. Co.*, 49 Or. 95 (88 Pac. 962: 13 Ann. Cas. 883).

2, 3. In the absence of any showing of error in the admission or exclusion of testimony in the court below, which can only appear by bill of exceptions, the only question we can consider is whether or not the court was wrong in its conclusions of law deduced from the facts found by it. Indeed, it was conceded at the argument that the only issue to be determined on the record as presented is whether or not the court reached the correct conclusion of law on the facts disclosed in the findings.

4. There was no privity of contract between the defendants and Clark. Their liability to the plaintiff was not affected by any engagement entered into by him with Clark. The subject-matter of one contract is different from that of the other. The agreement between the plaintiff and the defendants was one of indemnity for the purpose of holding the plaintiff harmless from damages resulting from the operations of the corporation

while the defendants were the managers thereof. On the other hand, the agreement between the plaintiff and Clark had to do with the operations of the corporation at an entirely different period, to wit: while the plaintiff had it in charge. For these reasons we must lay out of the case any consideration of the contract between the plaintiff and Clark. Liability of the defendants to the plaintiff must result, if at all, from their contract with him and for damages visited upon him as a consequence of something to which that contract was subsidiary. That liability is not to be measured or controlled in any degree by a writing to which defendants were strangers. The compulsion of his engagement with Clark upon a matter not within the scope of his agreement with the defendants will not operate against them in favor of the plaintiff.

5, 6. Looking again into the findings, we discover that the agreement was made by the defendants as individuals with the plaintiff as a natural person, whereby "they agreed to hold the plaintiff harmless from any and all claims for damages by trespass growing out of the management of said corporations or either of them while they (the defendants) were thus engaged in logging." As to its scope and effect the contract must speak for itself and in its own terms. *Staver* v. *Locke,* 22 Or. 519 (30 Pac. 497: 17 L. R. A. 652: 29 Am. St. Rep. 621) ; *Fenton* v. *Fidelity & Casualty Co.,* 36 Or. 283 (56 Pac. 1096: 48 L. R. A. 770). Within the provisions of the contract as recorded in the findings of fact, if the plaintiff would recover, he must show that on account of damages by trespass growing out of the management of the corporation, while the defendants were in charge, some claim has arisen against him personally that he would be compelled to pay if, indeed, he must not show that he has actually paid such claim. The contention of the plaintiff is that, having undertaken to defend the action of Davidson against the timber company, the defendants are concluded

by the judgment there, not only as to the amount of damages inflicted upon Davidson by the timber company, but also as to their liability to the plaintiff. The fallacy of this contention lies in the assumption by the plaintiff that, because he is the owner of the stock of that concern, he himself is equivalent to the corporation. That, however, does not necessarily follow. The effect of a judgment in a case of this kind is, in respect to the matter directly determined, conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the action or proceeding litigating for the same thing under the same title and in the same capacity. Section 756, subd. 2, L. O. L. The only matter directly determined in that action was the amount of damages inflicted by the timber company upon Davidson, and we may concede that, inasmuch as the defendants here had undertaken the defense of that action, they would be concluded by the matter directly determined, to wit: the amount of damages visited upon Davidson, but no further. In *St. Joseph* v. *Union Railway Company*, 116 Mo. 636 (22 S. W. 794: 38 Am. St. Rep. 626), cited by the plaintiff, an individual had recovered judgment against the city for $6,000 compensation for personal injuries which he sustained by reason of a defective street; it being charged that the manner in which defendant's rails were laid constituted in most part the defect complained of. The judgment was affirmed on appeal to the Supreme Court, and the city, having paid the amount awarded, brought the action in question against the defendant, a street car company, to recover the amount paid to the plaintiff in the former case. The city contended that the defendant railway company was concluded at all points by the judgment in favor of the injured individual. The court, however, thus laid down the rule on the subject:

"But the judgment in the prior suit is not conclusive

evidence of all matters necessary to be proved by the plaintiff in his suit against the indemnitor. Thus the question whether the relation exists which gives a remedy over is of course open to inquiry. Again, the judgment in the first suit is conclusive only as to the facts thereby established, for the scope of the estoppel created by the first judgment cannot be extended beyond the point and issues necessarily determined by it."

The plaintiff seeks to work out a solution of the matter favorable to himself by argument that by as much as the corporation was compelled to pay damages, by so much the value of plaintiff's stock in the corporation was depreciated, amounting to damages to himself. If we concede that this secondary result is within the scope of the indemnity contract, yet it must appear by averment, and not by mere inference. It is not disclosed that the plaintiff was compelled to pay any subscription on the capital stock held by him on account of the unexpected claim of Davidson against the corporation; neither is it alleged that the stock had any value, of which a depreciation would work out hurt to the plaintiff. Moreover, he disposed of his entire interest in the corporation before he satisfied the judgment, and it does not appear that he sold for less than he paid for it, or that he was not fully reimbursed for all his expenses in the purchase of the stock.

In brief, he has not shown that any claim was made against him as an individual on account of the damages claimed by Davidson; neither does it appear that he has been compelled to pay anything by reason of his relations with the company as covered by his contract of indemnity with the defendants

The judgment of the court below is affirmed.

AFFIRMED.